[Civ. No. 17463. Second Dist., Div. One. Sept. 22, 1950.]

BENJAMIN FUHRMAN et al., Respondents, v. ABRAHAM FARKAS et al., Appellants.

Julius Blank and James G. Cooney for Appellants.

Harvey & Viereck and Barnet M. Cooperman for Respondents.

DORAN, J.—The respondents instituted the present action seeking to rescind a contract of sale under which respondents purchased from appellants certain hotel property situated at No. 14 Ozone Avenue, Ocean Park, California. The parties commenced negotiations in April, 1948; ultimately a sale price of $18,500 was agreed upon and escrow instructions signed on May 12, 1948. Respondents paid $3,500 in cash, assumed payment of a $10,000 first trust deed, and gave back to appellants a second trust deed in the sum of $5,000. Rents were to be prorated as of the close of escrow on the basis of a statement approved by respondents. Possession of the property was taken by the respondents on July 1, 1948, and the escrow closed on July 13, 1948.

On November 22, 1948, respondents Fuhrman served on appellants Farkas a written "Notice of Rescission and Offer of Restoration," predicated "on the ground that you induced us to enter into said contract by your false and fraudulent misrepresentations as to the legitimate monthly income from said property. That in writing you assured us that the legitimate monthly income was over $400.00 when you knew at said time and place that you were overcharging the tenants and that the ceiling monthly rates were not more than $218.00, that the sales price, to-wit, $18,500, was based upon the monthly income which you falsely and fraudulently misrepresented to us." The notice then tendered a return of the property and demanded a return of $5,900, "plus our expenses in connection with the escrow, less whatever is the reasonable value of the use of the apartment occupied by us."

The complaint which followed recites the above facts and

alleges that "defendants falsely and fraudulently represented to the plaintiffs in writing that the legitimate monthly income was $407," segregating the rentals received from each room, apartment, etc. The complaint then avers that "in support of their false and fraudulent representations as above outlined, defendants submitted to the plaintiffs their receipt books and records concerning the alleged legitimate income and plaintiffs relying upon said representations agreed to purchase . . . said premises and paid them the purchase money." It is also charged that "defendants well knew that said income was not legal and that the legitimate ceiling income was approximately one-half (½) of the amount represented to the plaintiffs."

The complaint further alleges that on November 21, 1948, "plaintiffs for the first time became aware" of the misrepresentations, and gave notice of rescission. A second cause of action alleged that plaintiffs feared that defendants would foreclose the second trust deed for failure to make payments thereunder, and sought an injunction against the defendants transferring said trust deed and restraining defendants from foreclosing same.

The trial court sitting without a jury, found that the misrepresentations were made as alleged and that plaintiffs relied thereon in purchasing the property. Judgment was entered in favor of plaintiffs in the sum of $5,900, together with cancellation of the second trust deed. Pending final settlement, plaintiffs were directed to pay to the holder of the first trust deed the monthly sum of $100, and "authorized to retain for the up-keep of the premises and as compensation to themselves the balance of any of the monthly income received from the rental of the said premises without making any accounting for the same to the defendants." The present appeal followed.

It is contended by appellants that "The decision is in error as a matter of law because it is in direct conflict with the testimony and evidence adduced at the trial and the law applicable to the case." Under this head appellants maintain that respondents as plaintiffs failed to carry the burden of proving the affirmative allegations made, and point to the fact that a rental statement furnished by appellants to the escrow on June 28, 1948, "could not have induced a purchase of property for which the escrow was opened upon May 12, 1948." It is also argued that the escrow "neither contained or required any representation as to the amount of rents."

Respondents' brief points out that both parties intro-

duced evidence directly bearing upon the question whether appellants made false representations as to the legitimate monthly income derived from the property. Both written and oral misrepresentations were offered in evidence, and the case was tried on this theory. Rent receipt books exhibited to respondents by appellants were also placed in evidence and the plaintiffs' case was not made to depend upon the rental statement furnished in escrow, although such statement doubtless corroborated the other representations made. That the record contains substantial evidence in support of the trial court's findings and judgment can hardly be doubted.

As evidenced by respondent's Exhibit I, the Office of Housing Expediter had, in March of 1946, laid down ceiling rates for each of the units in the building, a copy of which schedule was in the possession of the appellants. These ceiling rates depended upon the number of persons occupying the unit and upon whether it was rented on a daily, weekly or monthly basis. For example, the maximum legal rate for Room 1 when rented to two people by the day is $1.50; by the week $5.50; by the month such rental is set at $22.

Abraham Farkas, appellant herein, testified to giving Mr. Fuhrman a paper prepared by Farkas' daughter specifying the rentals which were being collected. The record discloses the following testimony given by Farkas under section 2055 of the Code of Civil Procedure: "Q. Now, at the time you gave it (the paper) to him, was it true that you were collecting from Room 1, $60.00 a month or $15.00 a week. Is that true? A. That is the daily rate; on a daily rate." Respondent Fuhrman testified: "The earning capacity they (the appellants) said was $408.00 . . . per month," and that respondents relied on such statement. Respondents then purchased the property and continued to charge the same rentals as represented by appellants, supposing the same to be legal, until in November when the O.P.A. gave notice that such charges were unlawful, and that about $250 per month was all that could be charged.

There was testimony by an O.P.A. attorney that daily rentals "could not be required in advance," although, "a tenant might pay for his own convenience." There was evidence to the effect that appellants, prior to the sale did collect daily rentals in advance, and that respondents, relying on appellants' representations as to rentals, continued such advance collections until notified by the O.P.A. office.

The appellants' brief endeavors to explain the matter by affirming that the O.P.A. schedules provide a "maximum potential earning power of the premises to be $532.50 per month; further, that "The insistence of the plaintiff in collecting rentals by the month and in advance was the sole reason for the reduction of income earned by the premises," rather than any fraud on the part of appellants. However, as pointed out by respondents, the "potential earning power" is not an issue on this appeal; the question involved is that of appellants' misrepresentations.

As concerns appellants' second contention mentioned above, the record indicates that in collecting rentals after purchasing the property, respondents merely carried on in the manner indicated by the appellants' representations. Again, there is evidence supporting the trial court's conclusion that the loss in monthly rentals reasonably anticipated when respondents purchased the premises, was directly due to the appellants' misrepresentations as to the amounts which could legally be collected. In place of $408 which respondents were led to believe could be legally collected each month, respondents soon found that the law would only permit the collection of about $250 per month. To attribute this loss to respondents' activities rather than to appellants' admitted statements concerning rentals, in reliance of which the sale was consummated, would require a trial or an appellate court to either ignore or discredit much of the evidence in the record. This, the trial court refused to do. It cannot be said that such conclusion was wrong.

The appellants' contentions are without merit, and no reversible error has been pointed out.

The attempted appeal from the order denying a new trial is dismissed, and the judgment is affirmed.

White, P. J., and Drapeau, J., concurred.